UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NARRAGANSETT BAY INSURANCE COMPANY, Plaintiff, v. KENNETH L. KAPLAN and DONNA L. KAPLAN, Defendants. | CIVIL ACTION NO. 14-CV-12466-JCB |

**STATEMENT OF FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED IN CONNECTION WITH NARRAGANSETT BAY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

**The Parties**

1. The plaintiff, Narragansett Bay Insurance Company (hereinafter, "NBIC"), maintains a principal place of business at 25 Maple Street, Pawtucket, RI 02660. NBI regularly conducts business within the Commonwealth of Massachusetts, including the provision of a policies of insurance including, *inter alia,* a homeowners' policy to Kenneth and Donna Kaplan (hereinafter the "Kaplans"). (Declaratory Judgment Complaint at ¶ 1.)

*Defendants' answer: Agreed.*

2. Defendant Kenneth L. Kaplan is, on information and belief, a resident of Hull, Massachusetts, residing at 73 Manomet Ave., Hull, MA. (App., Tab A, Complaint at ¶ 4; Tab B, Policy at Dec. Page.)

*Defendants' answer: Agreed.*

3. Defendant Donna L. Kaplan is, on information and belief, a resident of Hull, Massachusetts, residing at 73 Manomet Ave., Hull, MA 02045. (App., Tab A, Complaint at ¶ 3; Tab B, Policy, Dec. Page.)

*Defendants' answer: Agreed.*

**<u>The Underlying Complaint and Claims</u>**

4. The Kaplans have been sued in an action entitled *Costello v. Kaplan*, et al., Plymouth Superior Court, C.A. No. 13-01146A (hereinafter, the "Underlying Action"). (App., Tab A, Complaint.)

*Defendants' answer: Agreed.*

5. The Costellos, plaintiffs in the Underlying Action and abutting landowners to the Kaplans, claim that the Kaplans attempted to obtain and enforce certain property rights, over the Costello property to which they were not entitled. (App., Tab A, Complaint at ¶¶ 11-44).

*Defendants' answer: Disagree to the condensation of 33 paragraphs contained in the Costello's complaint and the conclusory nature of the condensation. This paragraph mischaracterizes the situation that exists between the Costellos and the Kaplans.*

6. In sum, the Costellos allege that the Kaplans knowingly undertook an overly-aggressive course of conduct, revolving around a dispute as to the use of town property abutting both the Costellos' and the Kaplans' land, which course involved the Kaplans threatening the Costellos, and repeatedly (and improperly) calling the police, and both state and local authorities, to investigate conduct by the Costellos (App. Tab A, Complaint at ¶¶ 45-144).

*Defendants' answer: Disagree to the condensation of 33 paragraphs contained in the Costello's complaint and the conclusory nature of the condensation. This paragraph mischaracterizes the situation that exists between the Costellos and the Kaplans.*

7. The Costellos claim entitlement to recovery from the Kaplans, based on the legal theories of Abuse of Process, Massachusetts Civil Rights Act Violations, and Intentional Infliction of Emotional Distress (Complaint at Exhibit A, at ¶¶ 187-214).

*Defendants' answer: Agreed that the legal theories in the Costello's complaint are included in paragraph 7 of the statement of facts.*

8. As to their claims of Abuse of Process, the Costellos allege the following against the Kaplans:

a. The Kaplans have filed separate civil actions since the beginning of 2012 that affect William Costello's home and property interests at 2 Alden Street.

*Defendants' answer: Disagree to allegation the Kaplans have filed separate actions against the property interest of William and Mary Costello. In the underlying case, the Kaplans have filed counterclaims for trespassing, intentional infliction of emotional distress and are in the process of amending the counterclaims to include a count of battery against William Costello. In several other zoning cases the Court ordered the Kaplans to include the Costellos as an indepensible party.*

b. The Kaplans have used the threat and ultimately the initiation and prosecution of these five civil actions for the primary goal of coercing William Costello to surrender the Kaplans the use of land owned by and licensed to him. The motivation of the Kaplans includes achieving an expansion of their rear yard beyond its deeded boundary lines, forcing William Costello to remove fencing and structures that offered the Kaplan, and increasing the value and utility of the property at 73 Manomet Avenue.

*Defendants' answer: Disagree with the allegations made in paragraph 8(a).*

c. The Kaplans have used the threat and ultimately the initiation and prosecution of these five civil actions for the goal of coercing the Town of Hull Board of Selectmen to revoke the license it granted

to the Costellos, in whole or in part, and to coerce the Town of Hull Board of Selectmen to allow Donna Kaplan and/or Kenneth Kaplan to use Town land directly abutting 2 Alden Street.

*Defendants' answer: Disagree with the allegations made in paragraph 8(c).*

d. The Kaplans have used the threat an ultimately the initiation and prosecution of these five civil actions for the goal of causing William Costello to incur such substantial legal expenses, and to suffer such distress and inconvenience, that he will be compelled to enter into a settlement that will benefit the Kaplans to his own detriment. Similarly, the Kaplans have initiated and prosecuted these civil actions for the goal of causing the Town of Hull to incur such expense and experience such inconvenience and disruption in its normal municipal functions that it will be compelled to enter into a settlement or take actions that will benefit the Kaplans and/or cause detriment to the Costellos.

*Defendants' answer: Disagree with the allegations made in paragraph 8(d).*

e. If success on the merits, none of the five civil actions filed by the Kaplans can provide the result actually sought by Kaplans -- the expansion of the Kaplans' back yard into land owned by the Costellos and/or the Town of Hull.

*Defendants' answer: Disagree with the allegations made in paragraph 8(e).*

f. The Kaplans use of these five legal processes for ulterior and illegitimate purposes has caused

William Costello to suffer substantial damages, including without limitations legal fees and expenses costing tens of thousands of dollars, emotional distress, and other damages recoverable at law. (App., Tab A, Complaint at ¶¶ 188-193 and 195-200).

*Defendants' answer: Disagree with the allegations made in paragraph 8(f).*

9. As to their claims for violations of M.G.L.c. 12, §§ 11H, 11I, and IIJ, the Costellos allege:

a. Their right to use and enjoy her property and property interests is constitutionally secured by the Massachusetts State Constitution and the U.S. Constitution.

*Defendants' answer: Disagree with the allegations made in paragraph 9(a).*

b. Since 2008, the Kaplans, by way of threats, intimidation and coercion, have interfered with and attempted to interfere with their right to use and enjoy the property.

*Defendants' answer: Disagree with the allegations made in paragraph 9(b).*

c. As a result of the Kaplans' threatening, intimidating and coercive behavior and actions directed at [the Costellos] and their property interests, including those detailed in this Complaint and others, [the Costellos'] civil rights have been violated and she has suffered legal damages, including without limitation legal fees costing tens of thousands of dollars,

emotional distress, diminution in the value of her property, loss of the peaceful and quiet use and enjoyment of her property, and other damages recoverable at law.

*Defendants' answer: Disagree with the allegations made in paragraph 9(c).*

d. As detailed in the complaint and otherwise, since 2008 the Kaplans have engaged in a campaign of harassment, litigation, complaints, and extreme and outrageous conduct that they knew of should have known would cause [the Costellos] emotional distress and/or with the intent to cause emotional distress to [the Costellos].

*Defendants' answer: Disagree with the allegations made in paragraph 9(d).*

e. The Kaplans' extreme and outrageous conduct is beyond all bounds of decency, is not tolerable in a civilized society, and has caused [the Costellos] to suffer shock, insomnia, extreme stress, health complications, nausea, anxiety, fear, great indignity and other severe emotional harm that no reasonable person should be expected to endure.

(App., Tab A, Complaint at ¶¶ 202-205 and 206-208).

*Defendants' answer: Disagree with the allegations made in paragraph 8(a).*

10. In support of their claims of Intentional Infliction of Emotional Distress, the Costellos allege:

a. As detailed in the complaint and otherwise, since 2008 the Kaplans have engaged in a campaign of harassment, litigation, complaints, and extreme and outrageous conduct that they knew or should have known would cause [the Costellos] emotional distress and/or with the intent to cause emotional distress to [the Costellos].

*Defendants' answer: Disagree with the allegations made in paragraph 10(a).*

b. The Kaplans' extreme and outrageous conduct is beyond all bounds of decency, is not tolerable in a civilized society, and has caused [the Costellos] to suffer shock, insomnia, extreme stress, health complications, nausea, anxiety, fear, great indignity and other severe emotional harm that no reasonable person should be expected to endure.

(App., Tab A, Complaint at ¶¶ 210-211 and 213-214).

*Defendants' answer: Disagree with the allegations made in paragraph 10(b).*

**The Insurance Policy**

11. NBI issued a policy of homeowners' insurance to the Kaplans in Massachusetts which may be identified as Policy Number 10344957, having a policy period of 11/08/12-11/08/13 (hereinafter, the "Policy"). (App., Tab B, Policy.)

12. The Policy provides the following relevant terms and/or endorsements. The essential grant of liability insurance coverage and defense of suits states as follows:

> ***Section II - Liability Coverages***
>
> *A. Coverage E - Personal Liability*
>
> *If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:*
>
> *1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and*
>
> *2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.*

(App., Tab B, Policy at 33 of 48.)

13. The policy specifies its applicable timeframe:

> *I. Policy Period*
>
> *This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.*

(App., Tab B, Policy at 2 of 48.)

14. The policy defines various relevant terms, the most significant of these being:

*2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.*

*5. "Insured" means:*

*a. You and residents of your household who are:*

*1) Your relatives; or*

*2) Other persons under the age of 21 and in the care of any person named above;*

*8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in"*

*a. "Bodily injury"; or*

*b. "Property damage".*

*9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.*

(App., Tab B, Policy at 2-3 of 48.)

15. The Policy also provides the following exclusions that limit the scope of coverage under Coverage E:

*Coverages E and F do not apply to the following:*

*1. Expected Or Intended Injury*

*"Bodily Injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":*

*a. Is of a different kind, quality or degree than initially expected or intended; or*

*b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.*

*However, this Exclusion E.1. does apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property";*

* * *

*7. Sexual Molestation, Corporal Punishment or Physical Or Mental Abuse*

*"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; ...*

(App., Tab B, Policy at 37 of 48.)

16. The Policy also contains the so-called Mariner Plus Endorsement, which provides monetary limits and defines "personal injury":

*FOR AN ADDITIONAL PREMIUM, THE FOLLOWING ENHANCEMENTS ARE INCLUDED:*

*1. Coverage E Personal Liability*

*The limit of liability is increased to $500,000.*

* * *

*Definitions*

*The following definition is added:*

*"Personal Injury" means injury arising out of one or more of the following offenses but only if the offense was committed during the policy period:*

*1. False arrest, detention or imprisonment;*

*2. Malicious prosecution;*

> *3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;*
>
> *4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or*
>
> *5. Oral or written publication of material that violates a person's right of privacy.*

(App. Tab B, Policy at 1-2 of 10.)

17. The Mariner Plus Endorsement provides certain defense and coverage terms:

> *Section II - Liability Coverage*
>
> *The following is added to Coverage E - Personal Liability:*
>
> *Personal Injury Coverage*
>
> *If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will"*
>
> *1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and*
>
> *2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.*

(App., Tab B, Policy at 3 of 10.)

18. The Mariner Plus Endorsement excludes the following from coverage:

> *Section III - Exclusions*
>
> *With respect to the coverage provided by this endorsement, the exclusions under Coverage E - Personal Liability and Coverage F - Medical Payments are deleted and replaced by the following:*
>
> *1. This insurance does not apply to "personal injury":*
>
> *a. Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";*
>
> *b. Arising out of oral or written publication of material, if done by or at the direction of an "insured" with knowledge of its falsity;*
>
> *c. Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;*
>
> *d. Arising out of a criminal act committed by or at the direction of an "insured";*

(App., Tab B, Policy at 3-4 of 10.)

19. The Mariner Plus Endorsement further provides:

> *1. Limit of Liability*
>
> *Our total liability under "Personal Injury" coverage for all damages resulting from any one offense will not be more than the limit of liability shown in the Declarations for Coverage*

*E - Personal Liability. This limit is the same regardless of the number of "insureds", claims made or suits brought.*

(App., Tab B, Policy at 5 of 10.)

Defendant's answer: The Defendants' agree that NBIC has cherry picked several paragraphs from the 61 page policy and requests that the entire policy be reviewed.

**Counterclaims**

20. On or about July 6, 2014, the Kaplans answered NBI's Complaint for declaratory judgment in this matter.

*Defendants answer: Agree.*

In addition to answering, the Kaplans asserted a Crossclaim for declaratory judgment, based on the following allegations:

a. William and Mary Costello have filed suit against Donna L. Kaplan and Kenneth L. Kaplan in Plymouth Superior Court No. cv2013-1146a.

   *Defendants answer: Agree.*

b. The defendants properly notified NBIC of the underlying action.

   *Defendants answer: Agree.*

c. Both Kenneth L. Kaplan and Donna L. Kaplan meet the policy's definition of insured.

*Defendants answer: Agree.*

d. The NBIC policy and Massachusetts case law requires the plaintiff to provide the defendants with counsel.

   *Defendants answer: Agree.*

e. The NBIC policy and Massachusetts case law requires the plaintiff to indemnify the defendants for certain occurrences defined by common law, case law, and the homeowner's policy.

   *Defendants answer: Agree.*

f. NBIC provided the defendants with counsel with a reservation of rights.

   *Defendants answer: Agree, however in the instant action NBIC is attempting to renege on its obligation to provide counsel for the Kaplans.*

g. The NBIC policy in fact requires NBIC to defend or indemnify the defendants against the claims asserted in the underlying action.

(App. Tab C, Counterclaims at ¶ 3-9, 37-38.)

   *Defendants answer: Agree, however in the instant action NBIC is attempting to renege on its obligation to provide counsel for the Kaplans.*

21. The Kaplans further asserted Counterclaims for breach of contract against NBI, based on the following allegations:

a. The Kaplans' claim that the circumstances alleged in the Costello's complaint (CV2013-1146A) and the Kaplans claim they are insured under the policy of insurance, and that they are entitled to require NBiC to defend against the Costello's complaint (CV2013-1146A) on behalf of the Kaplans and to pay within the limits of such policy all sums which it shall legally obligated to pay resulting therefrom.

   *Defendants answer: Agree, however in the instant action NBIC is attempting to renege on its obligation to provide counsel for the Kaplans and have denied the Kaplans indemnification in the Costello case.*

b. The determination and construing the rights of the Kaplans and the obligations and duties of NBIC in relation to the policy is necessary for the protection of the Kaplans.

   *Defendants answer: Agree, however in the instant action NBIC is attempting to renege on its obligation to provide counsel for the Kaplans and have denied the Kaplans indemnification in the Costello case.*

c. NBIC is obligated to provide the defendants with legal representation to be supplied by the plaintiff and indemnification for any liability in the underlying case as the result of the homeowner's policy issued by the plaintiff to the defendants.

   *Defendants answer: Agree, however in the instant action NBIC is attempting to renege on its obligation to provide counsel for the Kaplans and have denied the Kaplans indemnification in the Costello case.*

d. The defendants are authorized to receive payment from the plaintiff for legal services and indemnification for any liability in the underlying case.

*Defendants answer: Agree, however in the instant action NBIC is attempting to renege on its obligation to provide counsel for the Kaplans and have denied the Kaplans indemnification in the Costello case.*

App., Tab C, Counterclaims at ¶ ¶ 12-15.)

22. The Kaplans have asserted a Counterclaim for Unfair and Deceptive Trade Practices in violation of M.G.L. c. 93A, based on the following allegations:

a. NBIC is engaged in the conduct of trade or commerce within Massachusetts as defined by M.G.L. c. 93A during the period relevant to this matter.

*Defendants' answer: Agreed*

b. The NBIC had denied the full coverage paid for by the defendant under the guise of reservation of plaintiff's rights.

*Defendants' answer: Agreed*

c. The defendants have sustained a loss of money as the direct and proximate result of the plaintiff's unfair and deceptive acts.

*Defendants' answer: Agreed*

d. Plaintiff's act were willful and knowing violations of M.G.L.c.93A, ¶2 AND C. 176d.

(App., Tab C, Counterclaims at ¶ ¶ 17-20.)

*Defendants' answer: Agreed*

23. The Kaplans have also asserted a counterclaim for Breach of Contract by Estoppel, based on the following:

a. NBIC has supplied legal services for the defendant and plaintiffs contend that such representation is subject to NBIC's discretion.

   *Defendants answer: Agree, however in the instant action NBIC is attempting to renege on its obligation to provide counsel for the Kaplans and have denied the Kaplans indemnification in the Costello case.*

b. NBIC provided an attorney for the Kaplans to defend the Costello case in October 2013.

   *Defendants answer: Agree, however in the instant action NBIC is attempting to renege on its obligation to provide counsel for the Kaplans and have denied the Kaplans indemnification in the Costello case. The attorneys in the Costello matter filed the answers after the 20 day deadline, the Anti Slapp motion to dismiss was not timely filed and discovery has not been zealously pursued.*

c. NBIC selected a law firm, Haverty and Feeney, to defend the Kaplans in the Costello lawsuit.

   *Defendants answer: Agree.*

d. The defendants' claim Haverty and Feeney notified the Kaplans that NBIC had selected Haverty and Feeney to represent the Kaplans in the Costello lawsuit.

*Defendants answer: Agree, however in the instant action NBIC is attempting to renege on its obligation to provide counsel for the Kaplans and have denied the Kaplans indemnification in the Costello case.*

e. The defendants' claim Haverty and Feeney informed the Kaplans that the firm would file an appearance and provide the Kaplan's with a defense throughout the course of this action, *Costello et al. Kaplan et al.*

   *Defendants answer: Agree, however in the instant action NBIC is attempting to renege on its obligation to provide counsel for the Kaplans and have denied the Kaplans indemnification in the Costello case.*

f. The defendants' claim Haverty and Feeney stated further that the Kaplan's may consult with a lawyer of their own choosing at the Kaplan's own expense.

   *Defendants answer: Agree, however in the instant action NBIC is attempting to renege on its obligation to provide counsel for the Kaplans and have denied the Kaplans indemnification in the Costello case.*

g. The defendants' claim Haverty and Feeney offered to provide detailed updates to the Kaplans' personal counsel.

   *Defendants Answer: Agree.*

h. The defendants' claim Haverty and Feeney withdrew from representation and successor counsel was selected by NBIC.

   *Defendants Answer: Agree.*

i. NBIC has since selected a successor law firm to represent the Kaplans.

*Defendants Answer: Agree.*

j. NBIC’s selection process has caused delays in defense of the case and prosecution of the defendant’s counterclaims.

*Defendants Answer: Agree.*

k. The defendants relied on NBIC to provide defense counsel throughout the entire matter, as promised by Haverty and Feeney, until the conclusion of the Costello et al. v. Kaplan et al case.

*Defendants Answer: Agree.*

l. The Kaplans have endured interruptions in this case caused by NBIC’s delay to make the initial appointment of legal counsel and successor counsel.

*Defendants Answer: Agree.*

m. The Kaplans made a decision in November 2013 based on the representations of NBIC and their agents and accepted NBIC’s appointed counsel based on NBIC representations and did not hire private counsel to the detriment of the defendants.

*Defendants Answer: Agree.*

n. As the result of NBIC actions, the defendants have suffered delays in the prosecution of their counterclaims against the Costellos, have been exposed to great legal and financial losses, and have suffered great emotional distress.

(App., Tab C, Counterclaim at ¶ ¶ 22-35.)

*Defendants Answer: Agree.*

24. The Kaplans acknowledge that NBI has provided them with a defense to the underlying action, at no cost to them.

*Defendants Agree with regards to NBIC providing them with a defense but NBIC has denied the Kaplans indemnification in the Costello case and are seeking to renege on the promise to provide a defense.*

Additional Facts Proposed by Defendants

1. NBIC issued a homeowners' policy to us and the policy was in effect during the period in question. (App. Tab B ¶ 4, Tab C ¶ 4)

2. We meet the policy's definition of insured in that I paid for the policy and I am named as insured on the policy. (App. Tab B ¶5, Tab C ¶ 5)

3. We believe the NBIC policy and Massachusetts case law requires the NBIC to provide me with counsel in the Costello v. Kaplan case. (App. Tab B ¶6, Tab C ¶6)

4. We believe NBIC policy and Massachusetts case law requires NBIC to indemnify me for certain occurrences defined by common law, case law, and the homeowner's policy. (App. Tab B ¶ 7, Tab C ¶ 7)

5. On October 23, 2013 William and Mary Costello have filed suit against Donna L. Kaplan and Kenneth L. Kaplan in Plymouth Superior Court No. CV2013-1146A Costello v. Kaplan). (App. Tab B¶ 8, Tab C ¶ 8)

6. We immediately filed a claim with NBIC after I was (App. Tab B ¶9, Tab C ¶ 9)

7. served with the summons and complaint in Costello v Kaplan lawsuit for a defense and indemnification.(App. Tab B ¶10, Tab C ¶ 10)

8. NBIC hired counsel to represent us under a reservation of rights. (App. Tab B ¶11, Tab C ¶ 11)

9. Attorney John Haverty of Haverty and Feeney notified us that NBIC had selected him to represent me in the Costello lawsuit. (App. Tab B ¶12, Tab C ¶ 12)

10. Attorney John Haverty informed me that the firm would file an appearance and provide me with a defense throughout the course of this action, Costello et al v. Kaplan et al. (App. Tab B ¶13, Tab C ¶ 13)

11. Attorney Haverty told me that he may consult with a lawyer of their own choosing at the Kaplans' own expense. (App. Tab B ¶14, Tab C ¶ 14)

12. Attorney Haverty offered to provide detailed updates to my personal counsel. (App. Tab B ¶15, Tab C ¶ 15)

13. Haverty and Feeney withdrew from representation and successor counsel was selected by NBIC. (App. Tab B ¶16, Tab C ¶ 16)

14. NBIC's selection process has caused significant delays in defense of the case in Costello v. Kaplan. (App. Tab B ¶17, Tab C ¶ 17)

15. We relied on NBIC to provide defense counsel throughout the entire matter, as promised by Haverty and Feeney, until the conclusion of the Costello v. Kaplan case. (App. Tab B ¶18, Tab C ¶ ¶18)

16. We have endured interruptions in this case caused by NBIC's delay to make the initial appointment of legal counsel and successor counsel. (App. Tab B ¶19, Tab C ¶ 19)

17. We made a decision in November 2013 based on the representations of NBIC and their agents and accepted NBIC's appointed counsel based on NBIC representations and did not hire private counsel to my detriment. (App. Tab ¶20, Tab C ¶ 20)

18. As the result of NBIC actions, we have suffered delays, have been exposed to great legal and financial losses, and have suffered great emotional distress. (App. Tab B ¶21, Tab C ¶ 21)

19. The delays cost us an opportunity to have the Anti-SLAPP Motion heard in February 2014. (App. Tab B ¶22, Tab C ¶ 22)

20. Monahan and Associates has appointed two different attorneys to represent us. (App. Tab B ¶23, Tab C ¶ 23)

21. To date, I have had 3 different attorneys represent me in the Costello v. Kaplan case and we have cooperated with each attorney as well as NBIC. (App. Tab B ¶24, Tab C ¶ 24)

22. To the best of our knowledge, the only discovery conducted so far has been one set of interrogatories and a request for production of document has been sent to the Costellos. (App. Tab B¶25, Tab C ¶ 25)

23. NBICs appointed counsel have requested documents and propounded interrogatories but the Costellos have not responded and no enforcement actions have taken place such as filing a motion to compel compliance with the discovery requests. (App. Tab B ¶26, Tab C ¶ 26)

24. To the best of our knowledge no depositions have been scheduled in the Costello case. (App. Tab B ¶27, Tab C ¶ 27)

25. I believe NBIC policy and Massachusetts case law requires NBIC to indemnify us for certain occurrences defined by common law, case law, and the homeowner's policy. (App. Ta(App. Tab B ¶28, Tab C ¶ 28)

26. We deny and have denied the allegations in the Costello complaint. (App. Tab B ¶29, Tab C ¶ 29)

27. We never intended to harass, intimidate, or coerce the Costellos. (App. Tab B ¶30, Tab C ¶ 20).

28. The NBIC policy in fact requires NBIC to defend and indemnify me against the claims asserted in the underlying action. (App. Tab B ¶31, Tab C ¶ 31)

29. We claim that the circumstances alleged in the Costello's complaint (CV2013-1146A) are occurrences under the policy and NBIC should be required to defend against the Costello's complaint (CV2013-1146A) on behalf of the Kaplans and to pay within the limits of such policy all sums which it shall legally obligated to pay resulting therefrom. (App. Tab B ¶32, Tab C ¶ 32)

30. We never sued the Costellos until ordered to do so by the Court because they we deemed as indepensible parties to my suits against the Town of Hull regarding zoning issues and appeals. (App. Tab B ¶33, Tab C ¶ 33)

31. The NBIC has denied us full coverage which I paid through premiums. (App. Tab B ¶34, Tab C ¶ 34)

32. We have sustained a loss of money as the direct and proximate result of the NCIC acts.(App. Tab B ¶35, Tab C ¶ 35)

33. NBICs act were willful and knowing violations of M.G.L.c.93A, §2 AND C.176D. (App. Tab B ¶36, Tab C ¶ 36),

34. NBIC is trying to renege on its obligations under the contract by undertaking this action. (App. Tab B ¶37, Tab C ¶ 37).

35. We could have hired private counsel and taken and engaged in alternative, more aggressive, legal strategies but I relied on the representations of NBIC, its agents and employees and a result I have suffered monetary loss and NBIC has initiated this lawsuit causing me further financial loss. (App. Tab ¶38, Tab C ¶ 38)

36. As the result of NBIC actions and inactions, we have suffered delays, have been exposed to great legal and financial losses, and have suffered great emotional distress. (App. Tab B ¶39, Tab C ¶ 39)

Respectfully submitted,
By the Defendants,
Kenneth and Donna Kaplan
By their attorney,

/s/ Joseph Lally
Joseph Lally, Esq.
BBO No.: 661747
joelally@lally-at-law.com
Mill River Executive Center
53 Winter Street
Weymouth, MA 02188
(617)-686-4784
Date: June 22, 2015

**CERTIFICATE OF SERVICE**

I, Joseph M. Lally, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). However, upon information and belief, the only registered participants identified at this time are Kathleen Kelley, Esq. and David M.O'Connor, Esq. counsel for NBIC.

/s/ Joseph M. Lally
Joseph M. Lally, Esq.

Date: June 22, 2015