UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
NARRAGANSETT BAY INSURANCE        )
COMPANY                           )
                                  )
          Plaintiff,              )
                                  )    CIVIL ACTION NO.
     v.                           )    14-12466-DPW
                                  )
KENNETH L. KAPLAN and             )
DONNA L. KAPLAN,                  )
                                  )
          Defendants.             )
```

MEMORANDUM AND ORDER
November 18, 2015

At issue in this case is whether an insurance company has a
duty to defend its policyholders in a state court lawsuit
against them alleging the commission of three intentional wrongs
arising from a dispute among neighbors.  Defendants Kenneth and
Donna Kaplan reside in Hull, Massachusetts, and purchased a
homeowner's insurance policy with a Mariner Plus endorsement
from plaintiff Narragansett Bay Insurance Company
("Narragansett").  That policy includes liability insurance for
the Kaplans, the terms of which will be detailed below.  Having
to date provided a defense — under a reservation of rights — for
the Kaplans in the underlying state litigation, Narragansett now
seeks a declaratory judgment determination by this court that it
has no duty to provide a defense.  For their part, the Kaplans

1

seek through counterclaims to establish that they are owed a defense.

## I. BACKGROUND

### A.    *The Underlying Suit*

In 2013, the Kaplans were sued in state court by their neighbors, William and Mary Costello.  That lawsuit came on the heels of five years of conflict between the Kaplans and Costellos. In the underlying action, the Costellos complained of an ongoing campaign of harassment by the Kaplans in an attempt to enlarge their own yard at the Costellos' expense.  As part of this campaign, according to the underlying complaint, the Kaplans filed five lawsuits in state court that involved the Costellos, initiated a number of complaints and appeals to town and state agencies, and wrote many aggressive e-mails about the matter to public officials and the local media.  In response, the Costellos have asserted three causes of action: abuse of process, intentional infliction of emotional distress, and violation of the Massachusetts Civil Rights Act.  To date, Narragansett has provided the Kaplans with counsel in the underlying action.[1]

---

[1] At some point, the original counsel provided by the insurer withdrew from representation of the Kaplans and a successor has been provided by Narragansett.

**B.**    *The Kaplans' Insurance Policy*

The Kaplans' homeowner policy provides personal liability insurance.  The standard coverage includes a duty to defend against all claims made against the insured for damages "because of 'bodily injury' or 'property damage' caused by an 'occurrence.'" Section II – Liability Coverages, § A.  "Bodily injury" is defined as "bodily harm, sickness or death." *Id.* Definitions section (2).  "Property damage" is defined as "physical injury to, destruction of, or loss of use of tangible property."  *Id.* Definitions section (9).  An "occurrence" is defined as an "accident" during the policy period which results in bodily injury or property damage.  *Id.* Definitions section (8).  This standard coverage also contains a number of exclusions, the most relevant of which excludes coverage for injuries that are "expected or intended by an 'insured,'" even if the resulting harm is of a different kind, quality or degree than initially intended or is sustained by a different person than intended. *Id*. Section II – Exclusions, § E.1.  In short, this section of the coverage concerns suits over unintentional, physical harms to people or property.

The Kaplans also purchased an additional policy, called the "Mariner Plus Endorsement," which covers suits for "personal injury."  That term is defined to cover enumerated intentional torts:

1. False arrest or detention

2. Malicious prosecution;

3. The "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor";

4. Defamation; and

5. The publication of material that violates a person's right to privacy.

Mariner Plus Endorsement, § 8.  The exclusions relevant to the standard coverage are not applicable to the additional Mariner Plus coverage, which are governed by a different set of exclusions.  In relevant part, coverage is excluded if the injury was "caused by" the insured, with "the knowledge that the act would violate the rights of another and would inflict 'personal injury'" or if the injury arose out of a criminal act caused by the insured.  Mariner Plus Endorsement, Section II - Exclusions.

No coverage is provided for conduct performed prior to the effective date of the policy.  The policy commenced on November 8, 2012, and accordingly Narragansett would only have a duty to defend against suits arising out of events after that date.

## II. STANDARD OF REVIEW

Narragansett has moved for summary judgment on its

declaratory judgment action and all counterclaims raised by the
Kaplans.  Summary judgment is appropriate where there is no
genuine dispute of material fact and the undisputed facts
demonstrate that the moving party is entitled to judgment as a
matter of law.  Fed. R. Civ. P. 56(a); *Carmona* v. *Toledo*, 215
F.3d 124, 132 (1st Cir. 2000).  A genuine issue is one which
"may reasonably be resolved in favor of either party," and a
material fact is one which could affect the outcome of the
litigation. *Vineberg* v. *Bissonnette*, 548 F.3d 50, 56 (1st Cir.
2008).  In determining whether genuine disputes of material fact
exist, all reasonable inferences must be drawn in the non-
movant's favor. *Id*.  The interpretation of an insurance policy
and the application of its language to facts is a question of
law.  *Massamont Ins. Agency, Inc*. v. *Utica Mut. Ins. Co.,* 489
F.3d 71, 72 (1st Cir. 2007).

### III. ANALYSIS

**A.   *Continuance under Fed. R. Civ. P. Rule 56(f)***

As a threshold matter, I must address the Kaplans' effort
to obtain a continuance under Rule 56(f) of the Federal Rules of
Civil Procedure in order to conduct additional discovery.  That
rule provides that a court may order a continuance to permit
additional discovery to be obtained, if there is a basis for
finding that a party lacks the facts essential to justify its
opposition to summary judgment.  Defense counsel avers that he

was unable to secure the facts necessary to oppose summary judgment.  He states that he needs the continuance in order to depose Narragansett employees and agents.

The Kaplans and their counsel have failed to make the requisite showings necessary for a continuance under Rule 56(f). A party seeking extra time under this Rule must show "(i) good cause for his inability to have discovered or marshalled the necessary facts earlier in the proceedings; (ii) a plausible basis for believing that additional facts probably exist and can be retrieved within a reasonable time; and (iii) an explanation of how those facts, if collected, will suffice to defeat the pending summary judgment motion." *Rivera-Torres* v. *Rey-Hernandez*, 502 F.3d 7, 10 (1st Cir. 2007).  The party must also show "due diligence" in pursuing discovery prior to the deadline. *Id.*

Here, the Kaplans are unable to meet any of these criteria, much less all of them.  Discovery in this action closed on September 14, 2015, yet no reason was provided in June, when the issue was first raised, why adequate discovery could not be conducted before the end of discovery.  More fundamentally, the Kaplans and their counsel have provided no explanation of specifically what facts they seek in discovery, much less the availability of those facts and how they would assist in the opposition to summary judgment.  At the hearing on the summary

judgment motion, counsel for the Kaplans remained unable to identify material facts for discovery. This is not surprising because the motion turns on undisputed facts, principally construction of insurance contracts. I will deny a continuance.

### B.   *Narragansett's Duty to Defend*

The basic principles governing an insurer's duty to defend are well-established under Massachusetts law. "An insurer has a duty to defend an insured when the allegations in a complaint are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms." *Billings* v. *Commerce Ins. Co*., 936 N.E.2d 408, 414 (Mass. 2010). This duty extends broadly. "[T]he underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage. However, when the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant." *Herbert A. Sullivan, Inc*. v. *Utica Mut. Ins. Co*., 788 N.E.2d 522, 531 (Mass. 2003) (internal citations omitted). In other words, unless the insured could not be covered under the policy, there is a duty to defend. The burdens of persuasion begin with the obligation of the insured party to prove coverage

and then may shift to the insurer to prove that an exclusion applies. *Manganella* v. *Evanston Ins. Co.*, 746 F. Supp. 2d 338, 345 (D. Mass. 2010) *aff'd*, 700 F.3d 585 (1st Cir. 2012). Once the insured party's ultimate burden regarding coverage is satisfied with regard to at least one claim against the insured, the insurer has a duty to defend generally. *Dilbert* v. *Hanover Ins. Co.*, 825 N.E.2d 1071, 1075 (Mass. App. Ct. 2005).

When determining whether an insurer has a duty to defend, a court must look not merely to "the specific theories of liability alleged in the complaint" but rather "the source from which the plaintiff's [injury] originates." *New England Mut. Life Ins. Co.* v. *Liberty Mut. Ins. Co.*, 667 N.E.2d 295, 299 (Mass. App. Ct. 1996). The court must independently "look beyond the specified causes of action" and turn to the "underlying allegations" in determining whether a claim can be sketched that would be covered by the policy. *Global NAPs, Inc*. v. *Fed. Ins. Co.*, 336 F.3d 59, 62 (1st Cir. 2003)]. In this case, however, the parties have not identified any other claims which might be raised based upon the underlying allegations. Given the burden on the policyholder to establish coverage, I am limited by the submissions before me to determining whether Narragansett has a duty to defend based upon the three causes of action actually pled by the Costellos in their underlying complaint and identified by the Kaplans in this action.

Applying this standard, it is apparent that Narragansett does not have a duty to defend the Kaplans in the underlying suit.  The standard coverage only covers accidental harms, not intentional harms.  Each of the three causes of action requires intentional conduct for liability to exist and thus each is outside the coverage Narragansett undertook to provide.

The elements of an **abuse of process** claim are that: "(1) 'process' was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." *Gutierrez* v. *Massachusetts Bay Transp. Auth.*, 772 N.E.2d 552, 563 (Mass. 2002).  The "crux of an abuse of process claim" is a showing of an "illegitimate motive," making this cause of action turn on intent. *Millennium Equity Holdings, LLC* v. *Mahlowitz*, 925 N.E. 2d 513, 526 (Mass. 2010).

**Intentional infliction of emotional distress** is, as the name makes clear, an intentional tort.  The elements of the offense are that "(1) that [defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." *Polay* v. *McMahon*, 10 N.E.3d 1122, 1128 (Mass. 2014).

Finally, the Costellos' claim under the **Massachusetts Civil Rights Act** alleges the interference with a right through

"threats, intimidation, or coercion."  For the purposes of that act,

> a "threat" consists of "the intentional exertion of
> pressure to make another fearful or apprehensive of injury
> or harm"; "intimidation" involves "putting in fear for the
> purpose of compelling or deterring conduct"; and "coercion"
> is "the application to another of such force, either
> physical or moral, as to constrain him to do against his
> will something he would not otherwise have done."

*Glovsky* v. *Roche Bros. Supermarkets*, 17 N.E.3d 1026, 1035 (Mass. 2014).  Once again, this provision covers intentional, not accidental, conduct: these are behaviors undertaken with the purpose of improper persuasion.

The three causes of action alleged cannot arise out of an "occurrence," since they do not stem from accidental behavior, and they are necessarily excluded under the standard provisions' exclusion of expected or intended injuries.

These three causes of action are not covered under the standard provisions for a second reason.  None of the harms for which the three causes of action provides relief – legal harassment, emotional distress, or civil rights violations – constitute bodily injury or damage to property.  In the insurance context, "bodily injury" is a "narrow and unambiguous term." *Richardson* v. *Liberty Mut. Fire Ins. Co.*, 716 N.E.2d 117,

121 (Mass. App. Ct. 1999).  It refers only to "harm arising from
corporeal contact," in relation to "an organism of flesh and
blood," and does not extend to mental or emotional suffering.
*Id.* (quoting *Williams* v. *Nelson*, 117 N.E. 189, 196 (Mass.
1917)).  The incorporeal harms which these three causes of
action seek to remedy do not constitute bodily injury in this
sense.  Nor do they address damage to "tangible property" within
the scope of the policy.  *Compare Citation Ins. Co.* v. *Newman*,
951 N.E.2d 974 (Mass. App. Ct. 2011).

The supplemental coverage purchased by the Kaplans likewise
fails to cover those three causes of action.  The Mariner Plus
Endorsement lists five enumerated intentional torts which
constitute a covered "personal injury."  Intentional infliction
of emotional distress, abuse of process,[2] and civil rights
violations are not among the claims on that list.  Because the
three causes of action pled by the Costellos in the underlying
suit are not covered under either the standard coverage or the
supplemental coverage, they "lie expressly outside the policy
coverage and its purpose" and Narragansett has no duty to defend
the Kaplans against them.  No other claims supportive of
coverage have been suggested in submissions by the parties.  The

---

[2] The express inclusion of the related, though distinct, tort of
malicious prosecution in the Mariner Plus Endorsement, without a
parallel inclusion of abuse of process, is corroborative of a
contractual determination not to cover abuse of process claims.

Kaplans have failed to meet their burden to show coverage.  Cf.
*Manganella* v. *Evanston Ins. Co.*, 746 F. Supp. 2d 338, 345 (D.
Mass. 2010) aff'd, 700 F.3d 585 (1st Cir. 2012).

## C.   *Narragansett's Duty to Indemnify*

Narragansett also seeks a declaration that it lacks a duty
to indemnify the Kaplans in the underlying action.  Failing
that, it seeks a declaration that its duties are limited,
including by the applicable policy period.  "The duty to
indemnify is narrower in scope and distinct from the duty to
defend." *Travelers Ins. Co.* v. *Waltham Indus. Labs. Corp.*, 883
F.2d 1092, 1099 (1st Cir. 1989) (citing *Sterilite Corp.* v.
*Continental Cas. Co.*, 458 N.E.2d 338, 341 (Mass. App. Ct.
1983)).  Whereas an insurer's duty to defend is "measured by the
allegations of the underlying complaint," the duty to indemnify
is "determined by the facts, which are usually established at
trial." *Id.* (citing *Newell-Blais Post No. 443* v. *Shelby Mut.
Ins.*, 487 N.E.2d 1371, 1374 (Mass. 1986)).  Accordingly, a
declaratory judgment is not yet ripe for consideration regarding
the duty to indemnify where, as here, the underlying action has
not determined liability or adjudicated factual disputes.
"[A]ny determination as to the obligation of the insurer to
indemnify its insured would now be premature and must await the
resolution of the underlying claim." *Spoor-Lasher Company, Inc*.
v. *Aetna Casualty and Surety Company*, 39 N.Y.2d 875, 386

N.Y.S.2d 221, 352 N.E.2d 139 (1976) (relied upon in *Sterilite Corporation* v. *Continental Casualty Company*, 458 N.E.2d at 341); *see also John Beaudette, Inc.* v. *Sentry Ins. A Mut. Co.*, 94 F. Supp. 2d 77, 103 (D. Mass. 1999).  A declaration of Narragansett's duty to indemnify must wait until the underlying action is resolved.  I observe at this point, however, that having determined there is no duty to defend, there is necessarily no demonstrated basis for a duty to indemnify.

**D.   *Counterclaim: Estoppel***

The Kaplans argue that even if Narragansett did not owe them a duty to defend under the terms of the insurance policy, it was estopped from halting coverage once it began, based on promises that it had made.  As a general rule, estoppel claims are easily overcome in the context of an insurer's duty to defend.  A reservation-of-rights letter suffices under Massachusetts law to block any estoppel claim. *Three Sons, Inc.* v. *Phoenix Ins. Co.*, 257 N.E.2d 774, 777 (Mass. 1970) ("A reservation of rights in such circumstances notifies the insured that the insurer's defence is subject to the later right to disclaim liability.  The insured thus can take the necessary steps to protect his rights, and has no basis for claiming an estoppel."); *see also Salonen* v. *Paananen,* 71 N.E.2d 227, 231 (Mass. 1947).  Narragansett sent the Kaplans such a reservation-of-rights letter in this case.  Moreover, the Kaplans have

averred that their counsel was provided under a reservation of rights.

Despite this unambiguous reservation of rights acknowledged by the Kaplans, they contend that Narragansett is estopped from denying coverage based on a second, separate communication. The initial attorney provided by Narragansett, John Haverty, wrote to the Kaplans on November 1, 2013, stating that he would provide "a defense throughout the course of this action." This "promise," however, is not enough to create estoppel. It is little more than a statement of present intent, readily understandable to be modifiable by changed circumstances, as Mr. Haverty's subsequent withdrawal and the substitution of successor counsel makes clear.

In this context, the elements of promissory estoppel cannot be made out. First, promissory estoppel requires that that a person reasonably rely on a statement. *Trifiro* v. *New York Life Ins. Co.*, 845 F.2d 30, 33 (1st Cir. 1988). Yet in the face of two ostensibly contradictory statements (only one of which, it should be noted, came directly from Narragansett), it is at a minimum unreasonable to rely on one contradicted by the other. *Id.* ("The conflicting [statements] should have placed petitioner on notice that he should not rely on either statement. Confronted by such conflict a reasonable person investigates matters further; he receives assurances or clarification before

14

Case 1:14-cv-12466-DPW   Document 37   Filed 11/18/15   Page 15 of 19


relying."). As a matter of law, the Kaplans could not have reasonably relied on the Haverty statement, and their estoppel claims must fail.

Second, promissory estoppel requires that the promisee have detrimentally relied on the promise. *Anzalone* v. *Admin. Office of Trial Court*, 932 N.E.2d 774, 786 (Mass. 2010). How much evidence is required to prove detrimental reliance remains largely undefined under Massachusetts law, *Suominen* v. *Goodman Indus. Equities Mgmt. Grp., LLC*, 941 N.E.2d 694, 703 (Mass. App. Ct. 2011), although some evidence of detriment more than a "well founded hope" of a better outcome is clearly required. *Hall* v. *Horizon House Microwave, Inc.*, 506 N.E.2d 178, 184 (Mass. App. Ct. 1987). The Kaplans fail to provide any meaningful evidence of detriment, however. They allege in their complaint that they have been harmed by delays and interruptions caused by Narragansett's original selection of a lawyer and subsequent selection of a replacement lawyer. Additionally, they assert that they would have hired private counsel and engaged in more aggressive legal strategies were it not for the representations of Narragansett. These allegations lack meaningful specificity, which on its own is enough to defeat their claim. *Compare Hall*, 506 N.E.2d at 184 ("There is no evidence of how Hall fared as an independent entrepreneur and, therefore, whether he suffered any economic loss by postponing his own venture."). Moreover, the

alleged detriments are not causally linked to the promise in
question.  Dissatisfaction with the professional services
provided cannot transform an open-textured "promise" to keep
representing the Kaplans through the course of the underlying
action, made by the attorney eventually selected, into a promise
enforceable against Narragansett.  The promise of continuous
representation has no connection to the allegedly deficient
legal tactics employed by the Kaplans' counsel.  Narragansett
did not give up its right to contest the duty to defend.
Summary judgment must be granted in favor of Narragansett on the
Kaplans' estoppel counterclaim.

### E.   *Counterclaim: Unfair Trade Practices under Chapter 93A*

The Kaplans assert as an additional counterclaim, that
Narragansett's behaviors constitute unfair and deceptive trade
practices in violation of Mass. Gen. L. ch. 93A.  Because they do
not meaningfully brief this claim, it is difficult to discern
precisely which behaviors the Kaplans deem unfair trade
practices; the thrust seems to be that by reserving its right to
stop defending the Kaplans in the underlying action and then
seeking to do so in this action, Narragansett has unfairly led
them to believe they were covered.

As a threshold matter, Narragansett asserts that the
Kaplans failed to write a demand letter, as required by ch. 93A
§ 9(3).  However, that provision expressly excepts counterclaims

and cross-claims from the demand requirement.  *Id.  See also
Crosby Yacht Yard, Inc*. v. *Yacht Chardonnay*, 159 F.R.D. 1, 3 (D.
Mass. 1994).  No such procedural hurdle stands in the way of the
Kaplans' ch. 93A claim.

More fundamentally, no ch. 93A violation appears viable on
the merits.  To constitute an unfair practice giving rise to ch.
93A liability, the conduct in question must be "egregious."
*Baker* v. *Goldman, Sachs & Co.*, 771 F.3d 37, 51 (1st Cir. 2014).
Behavior that satisfies "the standard of the commercial
marketplace" does not violate 93A. *Commercial Union Ins. Co.* v.
*Seven Provinces Ins. Co.*, 217 F.3d 33, 40 (1st Cir. 2000).
Narragansett's behavior, even indulging every inference in the
Kaplans favor, does not qualify.  The reservation of rights,
followed by orderly recourse to a declaratory judgment action
for the judicial determination of the duty to defend, is a
standard and prudent practice in the insurance industry, as
recognized in the case law.  Narragansett has followed that
practice and the Kaplans have offered neither allegation nor
evidence to suggest any behavior worse than, or even different
from, the norm.  *See Hanover Ins. Co.* v. *Golden*, 746 N.E.2d 574,
576 (Mass. App. Ct. 2001) *aff'd*, 766 N.E.2d 838 (Mass. 2002)
(finding "not much substance" in a ch. 93A claim that an
insurer's reservation of rights letter and subsequent action for
a declaratory judgment were unfair acts).  Even an incorrect but

reasonable insurer determination to contest its duty to defend
would not, as a matter of law, support a claim under ch. 93A.
*Cf. Polaroid Corp.* v. *Travelers Indem. Co.,* 610 N.E.2d 912, 916
(Mass. 1993).  "There is nothing immoral, unethical or
oppressive in such an action." *Boston Symphony Orchestra, Inc.*
v. *Commercial Union Ins. Co.*, 545 N.E.2d 1156, 1160 (Mass.
1989).  Where the complaint in the underlying action asserted
three causes of action not covered by the policy, an insurer
hardly acts unfairly in seeking a judicial determination whether
its duty to defend is in force.  Narragansett's motion for
summary judgment will be granted on the Kaplans' ch. 93A claims.

## F.   *Counterclaim: Breach of Contract*

Finally, the Kaplans assert as two additional counterclaims
breach of contract and breach of the covenant of good faith and
fair dealing.  Again, these counterclaims arise from the same
facts and the same conflict over Narragansett's duty to defend.
Any claims of breach are as a formal matter premature.  In this
case, Narragansett merely seeks a declaratory judgment
determining whether it has a duty to defend the Kaplans in the
underlying suit.  It is uncontested that Narragansett has
provided the Kaplans with a defense up to this point.
Massachusetts does not recognize the doctrine of anticipatory
breach, *Tucker* v. *Diamond*, 2010 Mass. App. Div. 253 (2010)
*aff'd*, 957 N.E.2d 254 (Mass. App. Ct. 2011) (citing *Daniels* v.

*Newton*, 114 Mass. 530 (1874)).  Unless and until Narragansett fails to defend or indemnify the Kaplans, at a point when it is obligated to do so, there can be no breach of contract.  Thus far, Narragansett has defended the Kaplans under a reservation and I will declare they have no duty to do so; there is no basis at this point to find Narragansett is or will be required to indemnify the Kaplans.  No breach has occurred.

## IV. CONCLUSION

For the reasons set forth above, I GRANT Narragansett's motion for summary judgment.  In this connection, I declare that Narragansett owes the Kaplans no duty to defend them in the underlying Costello action; as a formal matter, I issue no declaratory judgment on Narragansett's duty to indemnify because the issue is not now ripe, if it ever will be.

*/s/ Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE